IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA ANN ELLIOTT, | ) | CASE NO. 1:11-CV-1924 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant, | ) | |

The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff Rebecca Ann Elliott's ("Plaintiff") application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C.  §§ 416(i) and 423, and Supplemental Security Income benefits under Tile XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be VACATED and REMANDED back to the Social Security Administration.

## I.  INTRODUCTION AND PROCEDURAL HISTORY

The Plaintiff filed prior applications for both Disability Insurance benefits and Supplemental Security Income on December 20, 2005. (Tr. 162-64, 167-69).  These applications were denied on April 3, 2006. (Tr. 93-95, 96-98).  On October 9, 2008, the Plaintiff filed an application for Social Security Income, (Tr. 170), and on November 17, 2008, filed an application for Disability Insurance benefits, (Tr. 173), alleging a disability onset date of March

31, 2008.[1] The Plaintiff's applications were denied initially and upon reconsideration.  (Tr. 102-16, 117-28).   Following this denial, the Plaintiff filed a timely request for an administrative hearing before an Administrative Law Judge ("ALJ").

On April 5, 2011, ALJ Kevin W. Fallis held a hearing in Cleveland, Ohio, during which the Plaintiff and vocational expert, Evelyn Sindelar (the "VE"), both testified. (Tr. 25-67). On April 27, 2011, the ALJ issued a "Notice of Decision-Unfavorable". (Tr. 8-24).  In his decision, the ALJ ruled that the Plaintiff had the residual functional capacity ("RFC") to perform the exertional demands of light work but was subject to specific exertional and non-exertional limitations that reduced her ability to fulfill the full range of light work.  (Tr. 16).  On June 13, 2011, the Plaintiff sought review of the ALJ's decision by the Appeals Council.  (Tr. 5).  In a notice dated August 24, 2011, the Appeals Council declined to review the decision of the ALJ, (Tr. 1-3), and the ALJ's decision became the final decision of the Commissioner. Thereafter, the Plaintiff filed an appeal to this Court.

II.  EVIDENCE

A.  Personal and Vocational Information

The Plaintiff is classified as a younger individual under 20 C.F.R. §§ 404.1563(c), 416.963(c). The Plaintiff was born in 1974, and was thirty-three years old on her alleged onset date and thirty-six years old at the time the ALJ issued his decision. (Tr. 173).  The Plaintiff has a sixth grade education and testified that she was in the process of trying to obtain her GED. (Tr.

---

[1]  The Court acknowledges that the ALJ indicated that the Plaintiff applied for Disability Insurance benefits on August 4, 2008 and Supplemental Security Income on July 30, 2008.  (Tr. 11, 89-92).

33).  The Plaintiff has past work experience entailing employment as a cashier and a laborer in a factory. (Tr. 58).

     B.  <u>Hearing Testimony</u>

       1.  Plaintiff's Testimony

At the hearing, the Plaintiff testified that she had not worked since March 31, 2008.  (Tr. 37).  The Plaintiff reported that she saw two physicians, Dr. Saroj Brar, whom she saw monthly for her reported mental health impairments and Dr. William R. Bohl, whom she saw when she was in pain due to her physical impairments.  (*Id*.).  The Plaintiff testified that she experienced pain in her right hand and lower back.  (Tr. 43).  She testified that she could walk fifteen minutes, stand forty-five minutes and lift about ten pounds. (Tr. 44). The Plaintiff also conveyed that she experienced depression and anxiety frequently, and that about twice a month she was so depressed she will not get out of bed. (Tr. 42, 51).  Furthermore, the Plaintiff reported that she is unable to complete cleaning and other household tasks if she is confronted with too much stress. (Tr. 53).

       2.  Vocation Expert's Testimony

At the conclusion of the Plaintiff's testimony, the ALJ asked the VE four questions involving a hypothetical individual.  For these questions, the ALJ described a person with the following limitations: pushing or pulling with the upper right extremity would be limited; climbing ladders, ropes or scaffolds could not be tolerated; stooping, kneeling, crouching and crawling could be performed occasionally; gross manipulations or handling of objects with the right upper extremity would be limited; and fine manipulations or fingering with the right upper extremity could be performed frequently.  (Tr. 59).  The hypothetical person was also limited to performing simple, routine and repetitive tasks in a work environment free of fast paced

production requirements involving only simple work related decisions and routine work place changes, and could only interact with the public and coworkers occasionally and superficially, but could be around coworkers throughout the day. (*Id*.).

The ALJ asked the VE if the hypothetical individual with the above mentioned limitations could perform unskilled work at the medium exertional level. (*Id*.). The VE stated that there were jobs available for a person with those traits, namely a sandwich maker, a stock inventory clerk, and a dishwasher. (Tr. 60). The ALJ then requested the VE to estimate whether there were any unskilled jobs available to an individual with the same traits and limitations described above, but at the light exertional level. The VE identified a checker in a warehouse, a laundry worker and an assembler as jobs the hypothetical individual could perform. (Tr. 61-62).

In the next hypothetical, the ALJ described an individual with the same limitations as those in the previous questions, but further limited the person to only occasional gross or fine manipulations, and only occasional pushing or pulling with the right upper extremity. (Tr. 62). The VE responded that the individual could no longer perform the work of an assembler but could perform the job of a mail clerk in a small office. (Tr. 63). In the following hypothetical question, the ALJ asked the VE to consider the same limitations as identified above but performed at the medium exertional level. (Tr. 64). The VE responded that there would be no jobs existing in the national economy this individual could perform. (*Id*.). Lastly, the ALJ questioned the VE regarding an employer's tolerance for an employee being off task for up to twenty percent of the workday, as well as being absent two workdays a month. (*Id*.). The VE responded that this hypothetical individual would not be able to perform any jobs in the national economy. (*Id*.).

C.  Medical Evidence

1.  Physical Impairments

The Plaintiff's physical impairments were assessed by Dr. William R. Bohl.  Records from Dr. Bohl reveal that he saw the Plaintiff on May 7, 2009 for complaints of pain across her lower back.  (Tr. 331).  An x-ray of the lumbar spine showed minimal lipping anteriorally at L2-3, L3-4, L4-5 and L5-S1 with disc space narrowing at L5-S1. (*Id.*).  Dr. Bohl opined that the Plaintiff's symptoms were most likely due to degenerative disc disease at L5-S1. (*Id.*) On July 27, 2009, Dr. Bohl conducted a magnetic resonance imaging ("MRI") study and the results revealed a large central disc protrusion at L5-S1. (Tr. 325).  On August 4, 2009, the Plaintiff underwent an L5-S1 laminectomy and discectomy. (Tr. 323).

On June 25, 2010, the Plaintiff returned to Dr. Bohl, claiming that her back pain following the surgery had increased.  (Tr. 309). Dr. Bohl's examination revealed that the Plaintiff's back pain was derived from her degenerative disc disease and an x-ray of her lumbar spine showed anterior lipping at multiple levels. (*Id.*). At this examination, Dr. Bohl observed that the Plaintiff's hands were swollen.  (*Id.*) Nerve conduction velocities of the hands showed severe carpal tunnel syndrome on the left side. (*Id.*).  Dr. Bohl prescribed bilateral wrist splints to be worn at night and renewed the Plaintiff's prescription for Voltaren. (*Id.*).

On September 14, 2010, the Plaintiff underwent left median nerve decompression due to her carpal tunnel. (Tr. 302). On December 20, 2010, an examination by Dr. Bohl revealed severe carpal tunnel syndrome on the right side. (Tr. 303).  On December 28, 2010, the Plaintiff underwent right median nerve decompression. (Tr. 298).  As of her most recent visit to Dr. Bohl on February 9, 2011, the Plaintiff still had reports of pain in her hands. (Tr. 294).

5

2.  Mental Impairments

The Plaintiff was seen by two consultative examiners in conjunction with her prior applications for Social Security benefits filed in 2005.  These applications are not presently before this Court. On March 23, 2006, the Plaintiff was seen by consultative psychologist, Dr. Sally Felker. (Tr. 236-39).  Dr. Felker opined that at the time of the examination, the Plaintiff "seem[ed] to have a limited ability to deal with stress", (Tr. 239), experienced occasional crying spells, difficulty controlling feelings of irritability, and had a restricted attention span and a lower concentration ability. (Tr. 237).  Dr. Felker diagnosed the Plaintiff with an unspecified type of mood disorder and assessed the Plaintiff's GAF score at 57. (Tr. 238-39).

The Plaintiff was also seen by Dr. Marianne Collins, a state agency consultant, in connection with her prior applications for benefits.  On April 3, 2006, Dr. Collins completed a "Psychiatric Review Technique Form" assessing the Plaintiff's mental condition from July 1, 2005 through March 27, 2006. (Tr. 244).  Dr. Collins opined that the Plaintiff had moderate difficulties in activities of daily life and social functioning, mild difficulties in concentration, persistence and pace, and no episodes of decompensation. (Tr. 254). Dr. Collins also completed a mental RFC assessment and concluded that the Plaintiff was capable of performing simple, repetitive tasks in a low stress work environment. (Tr. 242).

In connection with the current application for disability benefits, the Plaintiff provided records from her treating physician.  Dr. Saroj Brar had been treating the Plaintiff since July 26, 2005, through the time of the hearing before the ALJ. (Tr. 259). On January 20, 2009, Dr. Brar completed a report for the Bureau of Disability Determination. (Tr. 259-61).  Dr. Brar reported that the Plaintiff suffered from depressed mood, irritability, racing thoughts, anxiety and decreased concentration.  (Tr. 260).  The report revealed that the Plaintiff experienced reduced

energy, decreased sleep, low tolerance of frustration, crying spells and reduced interest in her surroundings. (*Id.*). Dr. Brar also reported that the Plaintiff's self care was good, that she was impulsive and irritable, had no motivation and her coping skills were limited.  (Tr. 260).  Dr. Brar further opined that the Plaintiff "[could not] tolerate too much stress of day to day activities or stress of a job."[2]  (Tr. 261).  Additionally, Dr. Brar reported that the Plaintiff had a fair response to treatment and was compliant with medication and appointments.  (*Id.*).  Dr. Brar diagnosed the Plaintiff with Bipolar I Disorder with Depression. (*Id.*).  Records from Dr. Brar dated January 13, 2009 through September 27, 2010 reveal that the Plaintiff was being seen on a monthly basis and that the course of treatment was counseling and medication. (Tr. 277-93).

In evaluation of the current application for benefits, Dr. Irma Johnston, a state agency consultant, reviewed the Plaintiff's file on February 2, 2009.  (Tr. 262).  Dr. Johnston's report stated that she attempted to contact the Plaintiff and Dr. Brar to obtain additional information, but neither responded.  (Tr. 274).[3]  Dr. Johnston noted that there was insufficient evidence for her to complete the "Psychiatric Review Technique Form" assessing the Plaintiff's mental impairments. (*Id*.).

### III. ALJ'S DECISION

After completing a review of the record, the ALJ determined that the Plaintiff was not disabled.[4]  At step one of the sequential evaluation analysis, the ALJ found that the Plaintiff had

---

[2] Although it is difficult to read Dr. Brar's handwriting, it appears to the Court and the parties, (Doc. 13, 14), that this is what Dr. Brar's writing stated.

[3] The Defendant indicated that Dr. Johnston also did not review Dr. Brar's opinion when completing the "Psychiatric Review Technique Form". (Def. Br. 5 n.3).

[4] The term "disability", narrowed to its statutory meaning within the Social Security Act, includes only physical or mental impairments that are medically determinable and severe enough

not engaged in substantial gainful activity since March 31, 2008, the Plaintiff's alleged onset date. (Tr. 13).  At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: "bipolar disorder with depression, bulging disc, and bilateral carpal tunnel syndrome that is more severe in the right than left wrist." (*Id.*). However, at step three, the ALJ concluded that none of these impairments, in combination or individually, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14).

Before proceeding to step four, the ALJ determined that the Plaintiff retained the RFC to perform light work but was subject to specific exertional and non-exertional limitations that reduced her RFC from the full range of light work. (Tr. 16).  The specific limitations that

to prevent the claimant from performing his/her past job and engaging in substantial gainful activity that is available in the national economy.  *Suggs v. Astrue*, No. 3:08-CV-00369, 2009 WL 3710721, at *10 (S.D.Ohio Nov. 5, 2009) (citing *Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986)).  Social Security Regulations require ALJs to resolve a disability claim through a given five step sequential evaluation of the evidence.  20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the give steps as follows:

1. If a claimant is doing substantial gainful activity – i.e., working for a profit – she is not disabled.

2. If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

3. If a claimant is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

5. Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

8

prevented the Plaintiff from performing the full range of light work included occasional gross manipulation or handling of objects with her right upper extremity, and occasional fine manipulation or fingering with her right upper extremity. (*Id.*). Additionally, the ALJ opined that the Plaintiff was limited to "performing simple, routine, repetitive tasks in a work environment that [wa]s free of fast-paced production requirements and involve[d] only simple work-related decisions and routine workplace changes." (*Id.*).  The ALJ further opined that the Plaintiff was "able to have occasional superficial interaction with the public, c[ould] be around coworkers throughout the day, but c[ould] only have occasional superficial interaction with coworkers." (*Id.*).

At step four, the ALJ determined that the Plaintiff could not perform any of her past work due to the VE's opinion that a person with the Plaintiff's RFC could not fulfill the requirements of her past positions.  (Tr. 18). Finally at step five, the ALJ determined that the Plaintiff could perform other jobs in the national economy, such as a laundry worker in domestic services, a warehouse checker and a mail clerk. (Tr. 19).

## IV. DISABILITY STANDARD

A claimant is entitled to receive benefits under the Social Security Act only when she establishes disability within the meaning of the Act. 42 U.S.C. §§ 423, 1381; 20 C.F.R. § 416.905.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905.

## V.  STANDARD OF REVIEW

The Court's review is limited to a determination of whether there is substantial evidence in the entirety of the record to support the ALJ's findings of fact and whether the ALJ employed the proper legal standards in making the decision. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of evidence. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "The substantial evidence standard … presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir.1984)).

The substantial evidence standard requires the Court to affirm the findings of the ALJ if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*citing Consolidated Edison Co.*, 305 U.S. at 229.  This Court may not decide this case de novo, resolve conflicts in the evidence or decide issues of credibility.  *Garner*, 745 F.2d at 387. The Commissioner's determination must be affirmed if it is supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently.  *See Mullen*, 800 F.2d at 545. "Therefore, if substantial evidence supports the ALJ's decision, this court defers to that finding even if there is substantial evidence in the record that would have supported the opposition conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  However, the Court may examine all of the evidence in the record in making its decision, regardless of whether the evidence was cited in the opinion of the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

VI. <u>ANALYSIS</u>

The Plaintiff challenges the ALJ's decision on two grounds.  First, the Plaintiff contends that the ALJ violated the treating physician rule when he failed to provide any reasons for rejecting the opinion of the Plaintiff's treating physician, Dr. Brar.  The Plaintiff further contends that the ALJ's violation of the treating physician rule is not harmless error.  Because the Court finds that one argument is dependent on the other, the Court will first address whether the ALJ violated the treating physician rule.

A.  <u>Treating Physician Rule</u>

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards.  One such standard, known as "the treating physician rule", requires the ALJ to give special attention to the findings of the claimant's treating physician.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).[5]  Treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique prospective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  *Wilson*, 378 F.3d at 544.  The opinions from such physicians are entitled controlling weight if: (1) they are "well-supported by medically

---

[5] Effective March 26, 2012, Sections 404.1527 and 416.927 of the Code of Federal Regulations were amended.  Paragraph (d) of each section was redesignated as paragraph (c).  *See* 77 F.R. 10651-01, 2011 WL 7404303.

acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must determine how much weight to assign the opinion by applying specific factors set forth in the governing regulations. These factors include: the length of the treating relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other relevant factor which may support or contradict the opinion. 20 C.F.R. §§ 416.927(c)(2)-(6), 404.1527(c)(2)-(6).

The Commissioner also imposes a duty on the ALJ to always provide "good reasons" for the weight ultimately assigned to the treating source's opinions. 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. This requirement is not simply a formality; it safeguards a claimant's procedural rights. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The good reason requirement is intended to serve two purposes. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that h[er] physician has deemed h[er] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted).

Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id*. at 243.

Regardless of how much weight is given to the treating physician's opinion, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).  Statements by a physician indicating that the claimant is "unable to work" are not entitled to any deference because only the Commissioner can render a decision on that issue.  *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010); SSR 96-5p.  Nevertheless, "the ALJ many not entirely ignore such an opinion", rather he must explain the consideration he gave to the treating physician's opinion.  *Id*. (*citing Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); SSR 96-5p).

Dr. Brar is the sole physician that expressed an opinion on the Plaintiff's mental impairments in conjunction with the Plaintiff's present application for disability benefits.  Dr. Brar had been treating the Plaintiff since July 26, 2005, and reported that the Plaintiff suffered from a depressed mood, irritability, racing thoughts, anxiety and decreased concentration.  (Tr. 259-60).  Dr. Brar also reported that the Plaintiff was impulsive, irritable, and had a low frustration tolerance.  (*Id.*). She further noted that the Plaintiff experienced crying spells and had a limited coping ability. (*Id.*).  Dr. Brar diagnosed the Plaintiff with Bipolar I Disorder with Depression and indicated that the Plaintiff responded fairly to medication. (Tr. 261).

The ALJ recognized that Dr. Brar was the Plaintiff's treating physician and acknowledged a portion of the physician's opinion.   The ALJ stated that, "the [Plaintiff had been] treated with Soraj Brar, M.D., since July 2005 for bipolar disorder with depression, and relie[d] upon counseling and prescription medication to address her symptoms." (Tr. 17).

13

However, other than this statement, the ALJ did not offer any additional comments regarding his consideration of Dr. Brar's opinion.

The Plaintiff argues that the ALJ's failure to provide good reasons for rejecting Dr. Brar's opinion violated the treating physician rule. Additionally, the Plaintiff contends it was a violation of the rule for the ALJ to assign specific weight to the other medical opinions on the record – opinions that were outdated and thus irrelevant to the application at hand – but disregard the treating physician's opinion. (Doc. 13).

The Court finds that the Plaintiff's assertion that the ALJ violated the treating physician rule is correct. While the ALJ did not specifically state that he rejected Dr. Brar's opinion, at no point did the ALJ directly indicate how much weight he attached to this opinion. In accordance with the treating physician doctrine, the ALJ should have explicitly specified the weight he assigned to Dr. Brar's opinion. By not specifying the weight that he gave to the Plaintiff's treating physician, the ALJ violated the treating physician rule.

Although the ALJ was not required to give controlling weight to Dr. Brar's opinion, the ALJ was required to specify the exact weight he gave the opinion, even if it was less deferential weight. If the ALJ had determined that Dr. Brar's opinion was not entitled to controlling weight, he should have utilized the various factors from 20 C.F.R. §§ 416.927(c)(2)-(6), 404.1527(c)(2)-(6), to assess how much weight to give the opinion. It appears to the Court that the ALJ did not apply these factors. Since the ALJ did not explain what weight he assigned to Dr. Brar's findings, the Court can do nothing more than speculate. It is unclear why the ALJ failed to state how much weight he gave to the only treating physician for the Plaintiff's mental health impairments during the relevant period, but specifically assigned "great weight" to two outdated opinions.

14

The ALJ assigned "great weight" to the opinions of Dr. Felker and Dr. Collins.  (Tr. 17-18).  Both Dr. Felker and Dr. Collins evaluated the Plaintiff in early 2006 to determine the Plaintiff's mental impairments in connection to her prior application for benefits filed on December 20, 2005, which is not currently under review. (Doc. 13).  Both assessments were conducted two years prior to the Plaintiff's alleged disability onset date in this application, and five years prior to the hearing before the ALJ.

The Court finds that the ALJ violated the treating physician rule in three ways.  The ALJ first erred when he failed to specify the weight he gave to Dr. Brar's opinion.  Second, if the ALJ found that Dr. Brar's opinion was not entitled to controlling weight, the ALJ should have stated so and made use of the specific factors under 20 C.F.R. §§ 416.927(c)(2)-(6), 404.1527(c)(2)-(6), to determine how much weight to give the opinion.  Lastly, the ALJ erred when he failed to list good reasons to explain to subsequent readers the why that weight was ultimately assigned to the treating physician's opinion.

## B.  Harmless Error Exception

Even though the ALJ violated the treating physician rule, the Defendant argues that the violation was harmless.  An ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the [treating physician's] opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakely,* 581 F.3d at 407 (*citing Rogers*, 486 F.3d at 243) (internal quotations omitted). The Court is required to remand where the ALJ fails to give good reasons for according less than controlling weight to a treating source's opinion unless the error is a harmless procedural violation.  *Wilson*, 378 F.3d at 547.  A violation of the "good reasons" rule can be deemed "harmless error" if:

(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) the Commissioner has met the goal of § 1527(d)(2)[6] even though [the ALJ] has not complied with the terms of the regulation."

*Cole*, 661 F.3d at 940 (*quoting Friend v. Comm'r of Soc. Sec.*, 375 F. Appx. 543, 551 (6th Cir. 2010)).  Although this list of "harmless" violations is not exclusive, these three instances are the most commonly recognized.

The Defendant argues that the ALJ's failure to address Dr. Brar's opinion was harmless because the ALJ's ruling was nonetheless consistent with Dr. Brar's opinion and the record as a whole.   The Defendant asserts that the limitations outlined by Dr. Brar were properly incorporated into the ALJ's RFC assessment.   The Defendant further contends that Dr. Brar's statement, that the Plaintiff "c[ould not] tolerate too much stress of day to day activities or stress of a job," reflected that the Plaintiff could not tolerate *too* much stress while working, but not that the Plaintiff could not tolerate working at all. (Tr. 261).   Additionally, the Defendant argues that the ALJ reasonably concluded that the treating physician's statements were consistent with the opinions of Dr. Felker and Dr. Collins.

On the other hand, the Plaintiff argues that the ALJ's finding that the Plaintiff was limited to a work environment free of fast-paced production requirements and that involved only simple work-related decisions and routine workplace changes was not consistent with the treating physician's opinion related to stress.   Specifically, the Plaintiff contends that the statement, "she c[ould not] tolerate too much stress of day to day activities or stress of a job," was never addressed by the ALJ.   (Tr. 261).   According to the Plaintiff, this statement should be read to conclude that the Plaintiff could not tolerate the stress of *any* job. If the Court reads the statement

---

[6] See footnote *supra*  n.3

as the Plaintiff suggests, the violation of the treating physician rule would not be harmless error because the ALJ's finding would be entirely inconsistent with the treating physician's opinion that the Plaintiff could not tolerate the stress required for a job.

The Court finds that the ambiguity of Dr. Brar's statement regarding the Plaintiff's ability to tolerate the "stress of a job" combined with the potential gravity and nature of its implication should have warranted greater consideration from the ALJ.  While the parties dispute the severity of Plaintiff's tolerance for stress, the record evidences that this problem has been a long standing issue for the Plaintiff.[7]  Allowing for the different interpretations of Dr. Brar's statement regarding the Plaintiff's tolerance for stress, it may have been beneficial for the ALJ to re-contact the treating physician to get clarity as to the meaning and context of this portion of her opinion. Due to the ambiguity and the ALJ's silence as to how he resolved the meaning of this statement from the sole treating source for the Plaintiff's mental impairments, the Court finds the error was not harmless because the different interpretations clearly affect the outcome.

Additionally, the Defendant contends that the ALJ reasonably concluded that the treating physician's statements were consistent with the opinions of Dr. Felker and Dr. Collins and any violation of the treating physician rule was harmless error.  Specifically, the Defendant points to where the ALJ gave great weight to the assessment of Dr. Felker because that opinion was consistent with the entirety of the evidentiary record.  (Tr. 17).  While the Court recognizes that the opinions of Dr. Brar and Dr. Felker are consistent with regard to the Plaintiff's fair response

---

[7] It is worth noting that both consultative examiners from the Plaintiff's prior application expressed concern about the Plaintiff's stress tolerance.  Dr. Felker stated that the Plaintiff's "ability to … tolerate the stressors of employment is judged to be moderately impaired," (Tr. 238), and that she "seem[ed] to have limited ability to deal with stress." (Tr. 239).  Dr. Collins found that the Plaintiff would be capable of performing "simple, repetitive tasks in a *low stress* work environment." (Tr. 242) (emphasis added).

to medication, the ALJ's assignment of great weight to an outdated medical opinion without addressing the weight assigned to the treating physician was potentially harmful.  See *Suggs v. Astrue*, No. 3:08-CV-00369, 2009 WL 3710721, at *9 (S.D.Ohio Nov. 5, 2009) ("ALJ's reliance on [a prior physician's] 2002 and 2003 observations about Plaintiff's improvements under conservative care as a basis for dismissing [the treating physician's] 2006 opinion suggests that the ALJ may have failed to consider 'other relevant factors,' such as the relative timeliness of those opinions.").

The ALJ also assigned "great weight" to the findings of Dr. Collins. The ALJ stated that the state agency consultant's assessment was consistent with the record as a whole, including the Plaintiff's "ability to complete numerous activities of daily living while caring for her children." (Tr. 18).  However, this description of the Plaintiff's daily activities was inconsistent with the Plaintiff's testimony in the present case.  Dr. Collins' assessment noted that the Plaintiff cooked for her family, prepared her children for school, left her home frequently and went shopping for groceries. (Tr. 242).  But, at the hearing, the Plaintiff testified that her husband now cooks for her family and does the grocery shopping, and that if she accompanies her husband to the store, she would need the assistance of a scooter due to her increased inability to stand or walk for long periods of time. (Tr. 44-46).  The Plaintiff also stated that her daughter is now home schooled. (Tr. 46). At no point did the ALJ reconcile the Plaintiff's testimony concerning her current limitations with Dr. Collins' assessment completed two years prior to her alleged onset date.

The Court finds it was improper for the ALJ to defer to Dr. Collins' assessment because it was based on different circumstances than those in the present application for benefits.  The ALJ credited Dr. Collins' findings but did not explain why he did not credit the Plaintiff's testimony about her daily activities.   The ALJ was required to explain his credibility

18

determinations in a way that was "sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SRR 96-7p.  "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247.  In this instance, the ALJ found that the Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not credible because they were inconsistent with his RFC assessment.  (Tr. 17).  However, it appears that the ALJ's ruling was largely based upon the outdated opinions of Doctors Felker and Collins.

Both of the consultative examining opinions predated the current disability application. The fact that the ALJ relied on these assessments without further explaining why he found the Plaintiff not credible is improper because the Plaintiff's reported daily activities changed between her first application for disability benefits and her second application.  *See Cole*, 661 F.3d at 938. (The Court remanded the decision of the ALJ, finding it was error to use the plaintiff's testimony from a prior hearing as a basis for discrediting the consultative examiner's opinion because the plaintiff's daily activities had changed in the three years between the first and second hearings.) By relying on a state agency consultant's assessment from five years prior to the hearing without further clarifying his credibility findings, the Court finds that the ALJ's opinion was not supported by substantial evidence. Therefore, the ALJ's violation of the treating physician rule does not constitute harmless error.

19

VII.    DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court recommends the decision of the Commissioner be VACATED and REMANDED to the Social Security Administration.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 9, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *See also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).